Marvin Edward BLISSIT,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04–05–00048–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 16, 2005.

Discretionary Review Refused
April 26, 2006.

---

Christina Mitchell–Tomasini, Law Office of Christina Mitchell–Tomasini, Boerne, for appellant.

Lucy Cavazos, Asst. Dist. Atty., Kerrville, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PHYLIS J. SPEEDLIN, Justice.

## MEMORANDUM OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

Marvin Edward Blissit, Jr. was convicted by a jury of aggravated assault. On appeal, Blissit contends that the trial court erred by: (1) allowing an officer to comment on his refusal to waive his *Miranda* rights; (2) denying his request to charge the jury with the lesser-included offense of deadly conduct; and (3) denying his request for an instruction on self-defense. Because Blissit's second issue is dispositive of this appeal, we do not reach the remaining issues. The trial court's judgment is reversed, and the cause is remanded to the trial court for a new trial.

### BACKGROUND

Blissit is the complainant's stepfather. On the night of the offense, Blissit and the complainant's mother, Bonnie Blissit, were arguing. Blissit took Bonnie's car keys

and exited the house to drive away in Bonnie's car. The complainant followed Blissit and pushed him. Blissit grabbed a paint roller and hit the complainant in the face. A struggle ensued, and the complainant punched Blissit in the side of the face. Pictures were introduced into evidence to show the extent of the injuries to both men as a result of the altercation. Bonnie separated Blissit and the complainant, and the complainant returned inside the house.

According to the testimony of Bonnie and the complainant, Blissit retrieved a gun from a shed. Blissit fired two shots into the air outside of the house and began threatening to kill the complainant. Blissit came into the house and began searching for the complainant. Bonnie was struggling with Blissit in the doorway of the room where the complainant and others were attempting to hide. Bonnie testified that Blissit was sweeping the gun across the room while threatening to kill the complainant and shot at the complainant when he stepped forward. Bonnie later admitted that she did not see Blissit point the gun at the complainant but only saw him sweeping the gun across the room. Bonnie also admitted that her back was to the room, and she was holding or repeatedly hitting Blissit's arms to prevent him from shooting the occupants of the room. The complainant testified that Blissit pointed the gun at him and fired a shot but missed. The shot that was fired in the room hit the ceiling. A jury convicted Blissit of aggravated assault.

In his second issue, Blissit contends that the trial court erred in denying his request that the lesser-included offense of deadly conduct be included in the charge. A two-prong test is applied to determine whether an appellant was entitled to an instruction on a lesser-included offense. *Campbell v. State,* 149 S.W.3d

149, 152 (Tex.Crim.App.2004); *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex. Crim.App.1993). First, to be considered a lesser-included offense, the lesser offense must be included within the proof necessary to establish the offense charged. *Campbell,* 149 S.W.3d at 152; *Rousseau,* 855 S.W.2d at 672–73. Second, some evidence must exist in the record that would permit a jury to rationally find that, if the defendant is guilty, he is only guilty of the lesser-included offense. *Campbell,* 149 S.W.3d at 152; *Rousseau,* 855 S.W.2d at 672–73. Because the determination of whether an offense is a lesser-included offense must be settled on a case-by-case basis, we must analyze: (1) the elements of the offense actually charged; (2) the statutory elements of the offense sought as a lesser-included offense; and (3) the proof presented at trial to establish the elements of the charged offense to see if that proof showed the lesser-included offense. *Campbell,* 149 S.W.3d at 153; *Jacob v. State,* 892 S.W.2d 905, 907–08 (Tex.Crim. App.1995).

Applying the first prong of the test, we are guided by the Texas Court of Criminal Appeals' decision in *Bell v. State,* 693 S.W.2d 434 (Tex.Crim.App.1985). In that case, the indictment charged Bell with the following:

> ... did then and there knowingly and intentionally use a deadly weapon, to wit: a firearm, and did then and there threaten George Smith with imminent bodily injury by the use of said deadly weapon.

The State asserted that reckless conduct under section 22.05(a) of the Texas Penal Code was not a lesser-included offense of the offense charged because "proof of danger of *serious bodily injury* is not established by the same or less facts than proof of a threat of imminent *bodily injury.*" *Id.* at 437 (emphasis in original). The

court first noted that in order to establish the commission of the offense charged, the State was required to prove: (1) a person; (2) intentionally or knowingly; (3) threatened another with imminent bodily injury; (4) by [knowingly and intentionally] using a deadly weapon. *Id.* at 438. The court then set forth the statutory elements of reckless conduct as including: (1) a person; (2) recklessly; (3) engages in conduct; (4) that places another in imminent danger of serious bodily injury. *Id.*

Applying the first prong of the test, the court noted that when the State established the higher culpable mental state of intent or knowledge, it necessarily established the lower culpable mental state of recklessness. *Id.* The court asserted that the precise issue "thus becomes whether proof of threatening another with imminent bodily injury *by using a deadly weapon* constitutes proof that the actor engaged in conduct that placed another in imminent *danger* of serious bodily injury." *Id.* (emphasis in original). The court held:

> Patently, threatening another with imminent bodily injury is engaging in conduct. When that threat is accomplished by the use of a deadly weapon, by definition the victim is "exposed" to the deadly character of the weapon and the inherent risk of serious bodily injury. The *danger* of serious bodily injury is necessarily established when a deadly weapon is *used* in the commission of an offense. It follows, therefore, that proof of threatening another with imminent bodily injury by the use of a deadly weapon constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury.

*Id.* at 438–39.

In *Isaac v. State*, the Houston court followed *Bell* in applying the first prong of the test. 167 S.W.3d 469, 473–75 (Tex. App.-Houston [14th Dist.] 2005, pet. filed).

In that case the indictment charged that Isaac "unlawfully intentionally and knowingly threaten[ed] Carl Isaac with imminent bodily injury by *using and exhibiting* a deadly weapon, namely a firearm." *Id.* at 474 (emphasis added). The court noted that the indictment charged appellant with aggravated assault under section 22.02(a)(2) of the Texas Penal Code. *Id.* The court then considered the elements of deadly conduct under section 22.05(a) of the Code, noting that a person commits the offense of deadly conduct if he "recklessly engages in conduct that places another in imminent danger of serious bodily injury." *Id.* The court held that it was bound by the decision in *Bell* to conclude that misdemeanor deadly conduct, as defined by article 22.05(a) of the Code, is a lesser-included offense of aggravated assault as charged in Isaac's indictment. *Id.* at 474–75.

The State heavily relies on the Amarillo court's opinion in *Miller v. State*, 86 S.W.3d 663 (Tex.App.-Amarillo 2002, pet. ref'd), to contend that the first prong of the test is not met. However, in *Miller*, the indictment charged that Miller "intentionally or knowingly threaten[ed] Greg Tyra with imminent bodily injury and did then and there *use or exhibit* a deadly weapon, to wit: an [sic] firearm." 86 S.W.3d at 664 (emphasis added). Because the charged offense could be proven by showing that Miller "exhibited" a deadly weapon, the Amarillo court distinguished *Bell*, asserting, "The difference is dispositive, as it does not necessarily follow that the *danger* of serious bodily injury is established when a deadly weapon is 'exhibited' in the commission of the offense as opposed to being 'used.'" *Id.* at 667.

■ Despite the State's assertion in its brief to the contrary, the indictment in the instant case charged Blissit with "intentionally and knowingly threaten[ing] Pres-

ton Wade Thomas with imminent bodily injury by *using and exhibiting* a deadly weapon, to wit, a firearm during the commission of said assault." (emphasis added). Because we must consider the elements of the offense "actually charged," *Campbell,* 149 S.W.3d at 151, the holding in *Bell* controls, and misdemeanor deadly conduct is a lesser-included offense of the aggravated assault offense charged in Blissit's indictment.[1]

 Turning to the second prong of the test, we must review the record and determine whether some evidence would permit the jury to rationally find that if Blissit is guilty, he is guilty only of the lesser-included offense. *Campbell,* 149 S.W.3d at 152. In making the decision under the second prong, the court evaluates the evidence in the context of the entire record, but does not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Hall v. State,* 158 S.W.3d 470, 473 (Tex.Crim.App. 2005).

In this case, the jury could have chosen to disbelieve the complainant's testimony that Blissit pointed the gun at him while believing Bonnie's testimony that Blissit merely swept the gun across the room. The jury also could have believed the gun discharged as a result of Bonnie's actions in holding or hitting Blissit's arm. *See Hayes v. State,* 728 S.W.2d 804, 810 (Tex. Crim.App.1987) (noting discharge of gun during struggle presents circumstances under which charge of reckless conduct is appropriate); *Isaac,* 167 S.W.3d at 475 (holding deadly conduct instruction required where jury could believe that gun discharged when the defendant's stepbrother tackled the defendant while grabbing the defendant's hand). Having reviewed the record, we conclude that there is some evidence that would permit the jury to rationally find that if Blissit is guilty, he is guilty only of the lesser-included offense of deadly conduct.

The trial court's failure to instruct the jury on the lesser-included offense of deadly conduct denied the jury the opportunity to consider the entire range of offenses presented by the evidence. *See Saunders v. State,* 913 S.W.2d 564, 570–71 (Tex. Crim.App.1995). As a result, Blissit was harmed by the omission of the lesser-included offense from the charge. *Isaac,* 167 S.W.3d at 476. Accordingly, we reverse the trial court's judgment and remand the cause to the trial court for a new trial.

---

1. We note that the Dallas court recently relied on *Miller* to assert that "proving aggravated assault as alleged in the indictment does not require proof that appellant *used* a deadly weapon, rather proof that appellant *exhibited* a deadly weapon is sufficient." *Schreyer v. State,* No. 05–03–01127, —— S.W.3d ——, ——, 2005 WL 1793193, at *7 (Tex.App.-Dallas July 29, 2005, no pet. h.). In a footnote, however, the Dallas court noted that the indictment in question read, in part, that appellant "intentionally and knowingly threaten[ed] [Detective] BAILEY, hereinafter called complainant, with imminent bodily injury, and said defendant did *use and exhibit* a deadly weapon." *Id.* —— S.W.3d at —— n. 5 (emphasis added). Because we are required to consider the elements of the offense "actually charged," we respectfully decline to follow our sister court's holding.